UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

| | |
|---|---|
| Present: The Honorable | Alka Sagar, United States Magistrate Judge |

| | |
|---|---|
| Alma Felix | N/A |
| Deputy Clerk | Court Smart / Recorder |
| Attorney Present for Plaintiff: | Attorney Present for Defendants: |
| None present | None present |

**Proceedings: (IN CHAMBERS) ORDER TO SHOW CAUSE**

Plaintiff, a California citizen, filed a Complaint in this action on April 2, 2026, against Defendant First Premier Home Warranty Corp., a New York home warranty company, alleging violations of California's Anti-Spam Law, Cal. Bus. & Prof. Code § 17529.5, and Trap and Trace Law, Cal. Penal Code § 638.51, under the California Invasion of Privacy Act, along with a common-law claim for intrusion upon seclusion.[1] (Dkt. No. 1). Defendant was served with the summons and Complaint on June 11, 2026 (Dkt. No. 8), but failed to respond or otherwise appear in this action, and the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a) on July 24, 2026 (Dkt. No. 12). On April 3, 2026, Plaintiff filed a Motion for Default Judgment pursuant to Rule 55(b) ("Motion"), along with a supporting Memorandum ("Motion Mem.") and a declaration of Plaintiff ("Plaintiff Decl.") and Plaintiff's counsel ("Ferrell Decl."). (Dkt. No. 14). Plaintiff seeks $21,000 in statutory damages and $604 in costs.

For the reasons stated below, Plaintiff fails to demonstrate his entitlement to relief on his claims. Plaintiff therefore will be given an opportunity to address why relief should not be denied in this matter.

## A. Legal Standard

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). Upon entry

[1] This case was filed as a putative class action, but Plaintiff does not presently seek relief on behalf of others.

of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977); see Fed. R. Civ. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied.").

After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); see Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 852 (9th Cir. 2007). "If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

**B. Plaintiff's Allegations**

In January 2026, Plaintiff's e-mail address, bradyl9@aol.com, received a "spam" email from Defendant, sent from the address "WYSa7XZ7oESF@gendafilem.nl," with the subject line: "Never Pay For Covered Home Repairs Again. First 2 Months FREE. Limited Time." (Compl. ¶¶ 10-11, Ex. A). Plaintiff, allegedly "[c]onfused, and believing that the e-mail might be from a friend in the Netherlands based upon the .nl domain," opened the email. (Id. ¶ 11). The body of the email stated: "Never Pay For Covered Home Repairs Again. First 2 Months FREE. Limited Time." (Compl. Ex. A).

Plaintiff allegedly was "induced to click through and visit Defendant's website" "[i]n an effort to determine the e-mail's origin and legitimacy." (Compl. ¶ 11). Through the website, Defendant installed numerous "tracking pixels" on Plaintiff's device that " allow various de facto data brokers (including Google Analytics and DoubleClick) to (1) intercept communications from Plaintiff and track Plaintiff across the internet and (2) use those communications to compile and sell deeply personal details about Plaintiff to the highest bidders." (Id. ¶ 21). The tracking pixels "collect as much data as [they] can about otherwise anonymous visitors to Defendant's website and match[] it with existing information that the Tracking Pixels have acquired and accumulated about hundreds of millions of Americans." (Id. ¶ 25). Plaintiff, when visiting Defendant's website

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

"to investigate" the spam email, "was unaware of the secret spyware being used to surveil visitors and monetize their personal information." (Id. ¶ 27).

## C. Discussion

Plaintiff's Motion seeks a default judgment against Defendant awarding him a total of $21,000 in damages (along with $604 in costs), which is based on $1,000 in statutory damages for violation of California's Anti-Spam Law, Cal. Bus. & Prof. Code § 17529.5, along with four violations (at $5,000 in statutory damages per violation) of California's Trap and Trace Law, Cal. Penal Code § 637.2(a),[2] (See Motion Mem. at 7).

However, Plaintiff fails to demonstrate entitlement to relief on these grounds because (1) he does not establish that the spam email was materially misleading or deceptive under Cal. Bus. & Prof. Code § 17529.5 to overcome federal preemption; and (2) he does not allege a concrete injury sufficient to establish standing to assert a trap and trace violation under Cal. Penal Code § 638.51.

### 1. Anti-Spam Law

California's Anti-Spam Law is violated when a person or entity "advertise[s] in a commercial e-mail advertisement either sent from California or sent to a California electronic mail" where:

> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party;
>
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information;[[3]] or

---

[2] Although the Complaint also asserts a common-law claim based on intrusion upon seclusion (Compl. at 12), the Motion does not seek relief on that claim (see Motion Mem. at 6, n.2).

[3] Header information means "the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message." 15 U.S.C. § 7702(8); see also Kleffman v. Vonage Holdings Corp.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
|---|---|---|---|
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code §§ 17529.5(a)(1)–(3).

However, state laws that regulate commercial email, as the Anti-Spam Law does, are broadly preempted by the federal Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, with only a "limited, narrow exception" for "state laws that proscribe 'falsity or deception' in commercial e-mail communications."[4] Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1061 (9th Cir. 2009); see 15 U.S.C. § 7707(b)(1) (providing that the CAN-SPAM Act supersedes any state law or regulation that "expressly regulates the use of [email] to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception* in any portion of a commercial [email] or information attached thereto" (emphasis added)). To satisfy the preemption exception, the false or deceptive information in a commercial email must be *material*. See Gordon, 575 F.3d at 1062 ("Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions."); Silverstein v. Keynetics Inc., 192 F. Supp. 3d 1045, 1049 (N.D. Cal. 2016) (overcoming CAN-SPAM Act preemption requires demonstrating "that the header information violates the state statute and contains material misrepresentations"), aff'd, 727 F. App'x 244 (9th Cir. 2018).

Here, Plaintiff fails to demonstrate that Defendant's spam email was materially deceptive or misleading. Plaintiff claims that Defendant's spam email violates Cal. Bus. & Prof. Code § 17529.5(a)(1) "because it uses the domain .nl without permission and because that domain is not readily traceable to Defendant." (Compl. ¶ 15). Plaintiff similarly claims that the email violates § 17529.5(a)(2) "because the header information is falsified and deceptive, including the use of a 'from' name, return address, and domain that does not accurately identify the party who initiated the email." (Compl. ¶ 16). However, commercial emails are not materially deceptive merely

---

49 Cal. 4th 334, 340 (2010) (noting that "California statutes do not define either the word 'header' or the phrase 'header information,'" and referencing the definition in the federal CAN-SPAM Act, 15 U.S.C. § 7702(8)).

[4] "The Court may raise the issue of preemption on its own upon an application for entry of default judgment." Sunteck Transp. Co., LLC v. Domestic Carrier, Inc., 2022 WL 17348190, at *3 (C.D. Cal. Sept. 19, 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

because the email address and domain name obscure the sender's identity, particularly where other information makes clear the email's commercial nature. See Silverstein v. Keynetics, Inc., 727 F. App'x 244, 246 (9th Cir. 2018) ("[T]he use of fictitious 'From' names does not make an email header materially false or misleading within the meaning of the CAN-SPAM Act where those names do not 'spoof' the identities of individuals known to the recipient and are accompanied by accurate domain names and subject lines that make it clear the email is commercial in nature."); Gordon, 575 F.3d at 1063 ("There is of course nothing inherently deceptive in Virtumundo's use of fanciful domain names."); Bianca Garcia v. AARP, 2026 WL 2367651, at *3 (C.D. Cal. July 21, 2026) ("Plaintiff's allegations that the third-party domain concealed AARP's identity and gave the false impression that the message originated from an independent entity amount merely to 'a technical violation that does not overcome the preemption bar.'" (quoting Rodriguez v. Endurance Warranty Servs., L.L.C., 2026 WL 1110696 at *5 (S.D. Cal. April 23, 2026))).

Here, the email address was "WYSa7XZ7oESF@gendafilem.nl," but the "From" name in the header was given as "First Premier Home Warranty," and the subject line was "Never Pay For Covered Home Repairs Again. First 2 Months FREE. Limited Time." (Compl. Ex. A). Plaintiff alleges that the ".nl" domain made him "believ[e] that the e-mail might be from a friend in the Netherlands" (Compl. ¶ 11), but that is a stretch. An email with this subject line and other header information would be very unlikely to deceive any reasonable person, even one with friends in the Netherlands. See also Rodriguez, 2026 WL 1110696, at *6 ("The header information of Defendant's marketing emails would only indicate that the sender was an unknown person, while the subject line makes clear that the email is an advertisement. Plaintiffs do not clarify how the header information within that context could plausibly deceive a reasonable person."); Andrews v. Conversion Squared Corp., 2020 WL 3978063, at *2 (C.D. Cal. May 8, 2020) ("[I]t is difficult to see how Plaintiffs could allege deception given that, as in Silverstein, the combination of the sender name and the subject line make apparent to any reasonable person the exact nature of the email." (citing Silverstein, 727 F. App'x at 246))

Plaintiff also claims that the email's subject line – "Never Pay For Covered Home Repairs Again. First 2 Months FREE. Limited Time" – violates § 17529.5(a)(3), which applies when the email's subject line would mislead a reasonable person "about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3). Plaintiff asserts that the subject matter here "is misleading in multiple, independent respects because it overpromises absolute benefits, misrepresents the true cost of the service, and manufactures false urgency." (Compl. ¶ 17).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

However, Plaintiff's supporting allegations, as worded, seem only to point to discrepancies between the email's subject line and the contents of typical home warranty promotions, rather than the particular contents of Defendant's offer. For example, Plaintiff states:

> [T]he representation "First 2 Months FREE" is misleading because it implies a no-cost benefit without disclosing the material conditions attached to that offer. *Such promotions* require enrollment in a paid plan, ongoing monthly obligations, automatic billing, or long-term commitments, none of which are disclosed in the subject line.

(Compl. ¶ 17 (emphasis added)). Similarly, Plaintiff states:

> [T]he statement '"Never Pay For Covered Home Repairs Again" is facially deceptive because it suggests that the consumer will incur no future costs for home repairs, when in reality *home warranty products* are subject to numerous material limitations, including coverage exclusions, caps, deductibles, service fees, and claim denials.

(Compl. ¶ 17 (emphasis added)). Notwithstanding these generalized allegations about "[s]uch promotions" and "home warranty products," the record here contains no information about Defendant's actual offer, details of which were presumably set forth on the linked website. The body of the email, attached to the Complaint, is identical to the subject line: "Never Pay For Covered Home Repairs Again. First 2 Months FREE. Limited Time." (Compl. Ex. A). Plaintiff therefore does not plausibly demonstrate that Defendant's email subject line would mislead a reasonable person about any material facts regarding the contents or subject matter of Defendant's particular message, as needed to establish a violation under § 17529.5(a)(3).

Accordingly, Plaintiff fails to show that he is entitled to relief on his Anti-Spam Law claim.

### 2. Trap and Trace Law

In addition to his Anti-Spam Law claim, Plaintiff seeks $20,000 statutory damages under California's Trap and Trace Law, Cal. Penal Code § 637.2, which Defendant allegedly violated by deploying "tracking pixels" on its website that "capture routing, addressing and/or other

signaling information of website visitors including Plaintiff."[5] (Compl. at 11-12; Motion Mem. at 2, 5). California provides a civil remedy of $5,000 per violation of this law.[6] Cal. Penal Code § 637.2(a)(1). The state law provides that a plaintiff need not "suffer[], or be threatened with, actual damages" to recover for statutory violations. Id. § 637.2(c).

Nonetheless, to obtain relief in federal court, Plaintiff must have Article III standing, which "requires a concrete injury even in the context of a statutory violation." Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016); see also TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); Garcia v. Warby Parker Inc., 2026 WL 3036405, at *8 (C.D. Cal. Oct. 8, 2026) ("As Plaintiff's second cause of action arises under the statute Cal. Penal Code § 638.51, the Court must 'independently decide whether a plaintiff has suffered a concrete harm under Article III.'" (quoting Ramirez, 594 U.S. at 426)); Cheung v. Slickdeals, LLC, 2026 WL 1872831, at *8 (C.D. Cal. June 29, 2026) ("Assuming arguendo, that plaintiff has alleged facts that state claims for violations of Cal. Penal Code § 631 and § 638.51, those statutory violations alone would not be sufficient to establish Article III standing." (citing Ramirez, 594 U.S. at 427; Spokeo, 578 U.S. at 341)).

A concrete injury for standing must bear "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." Ramirez, 594 U.S. at 424

---

[5] The state law defines "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

[6] Plaintiff seeks a total of $20,000 for four violations, "[b]ased on the two pen-register/trap and trace devices present on Defendant's Website (Google Analytics and DoubleClick), and Plaintiff's *two visits*, neither of which provided Plaintiff or any user a method for rejecting or opting out of unlawful identification and tracking." (Ferrell Decl. ¶ 11 (emphasis added)). Plaintiff does not explain why he made two visits to the website. It is not alleged in the Complaint, and his declaration in support of the Motion states, simply: "I believed the e-mail might be from a friend in the Netherlands based upon the .nl domain so I opened it and *clicked on the link two separate times* to figure out what the email related to." (Plaintiff Decl. ¶ 4 (emphasis added)). Although it is unclear why a second visit was needed for that purpose, the Court need not address this since the claim fails for the reason discussed below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-3545-AS | Date | November 3, 2026 |
| Title | Brady Laplante v. First Premier Home Warranty Corp. | | |

(quoting Spokeo, Inc., 578 U.S. at 341). Traditionally recognized harms include some "intangible" ones such as "disclosure of private information[] and intrusion upon seclusion." Id. at 425.

Here, the injury for Plaintiff's trap and trace claim seems most analogous to intrusion upon seclusion, which Plaintiff implicitly suggests by also raising this common-law claim in his Complaint (though the Motion does not seek relief on that claim).[7] See also, e.g., Garcia, 2026 WL 3036405, at *8 (assessing standing for California Trap and Trace claim based on analogous common-law tort of intrusion upon seclusion). "To show intrusion upon seclusion, a plaintiff must show 'an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025) (citation and emphasis omitted).

Plaintiff has not pled facts showing such harm. As indicated above, he alleges that he was induced to visit Defendant's website and the Defendant thereby installed on Plaintiff's device numerous "tracking pixels" that "allow various de facto date brokers (including Google Analytics and DoubleClick)" basically to gather and "sell deeply personal details about Plaintiff to the highest bidders," "thus operating as a 'Trap and Trace' device" under Penal Code § 638.51. (Compl. ¶¶ 21-22). Plaintiff provides general allegations about how tracking pixels work,

[7] The standing requirement also applies to Plaintiff's Anti-Spam Law claim. Several district courts have determined that the receipt of spam emails qualifies as a concrete injury sufficient to confer standing, under Ramirez and Spokeo, see, e.g., Brinton v. Vivint Inc., 2024 WL 3688589, at *3 (W.D. Wash. Aug. 7, 2024) (agreeing with other district courts that a recipient of spam emails suffers a concrete injury, "whether in the form of 'lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs,' in addition to the foundational injuries to privacy and freedom from nuisance" (quoting Lynch v. AML Network Ltd., 2021 WL 4453470, at *5 (C.D. Cal. Sept. 27, 2021))), though others have concluded otherwise, see, e.g., Samaduroff v. David Peyser Sportswear Inc, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) (siding with "the 'ever-growing list of decisions,' in [the Western District of Washington] and elsewhere, 'finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury'" (quoting Stutsman v. Sirius XM Radio LLC, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026))). The Court need not resolve this question here because Plaintiff fails to allege a violation of the Anti-Spam Law that overcomes federal preemption, for the reasons stated above.

including the types of information they gather and the uses for it. (See id. ¶¶ 21-26). However, he does not actually allege that he suffered any specific intrusion. Absent any such intrusion into Plaintiff's own information, Plaintiff lacks standing to raise this claim. See Popa, 153 F.4th at 791 (plaintiff lacked standing to raise claim under Pennsylvania's Wiretapping and Electronic Surveillance Control Act because she did not "explain how the tracking of her interactions with the . . . website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," and she "identifie[d] no embarrassing, invasive, or otherwise private information collected by" defendant's data-collection technology); Garcia, 2026 WL 3036405, at *8 (plaintiff lacked standing to assert Trap and Trace claim because she did not "identify what 'communications from Plaintiff' Defendant [was] purported to have intercepted and the nature of the 'deeply personal details about Plaintiff' that Defendant purportedly sold"); Cheung, 2026 WL 1872831, at *9 ("without any specific allegations as to what of plaintiff's personal information was collected by defendant, the Court cannot identify any harm to her privacy, much less identify a 'highly offensive' intrusion upon seclusion" sufficient to establish concrete injury for standing); Hughes v. Vivint, Inc., 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) (plaintiff lacked standing for Trap and Trace Law claim because she did not specify what personal information of hers was captured, "only what information could be captured," by defendant's software). Plaintiff therefore does not establish that he has standing to seek relief on his Trap and Trace claim.

## D. Order

Accordingly, Plaintiff is ORDERED TO SHOW CAUSE in writing, within fourteen (14) days of the date of this Order, why the Motion should not be denied, and this case dismissed, due to Plaintiff's failure to demonstrate standing and/or entitlement to relief for the asserted claims. Failure to timely file a written response to this Order may result in dismissal of this action for lack of standing, failure to state a claim for relief, and/or for failure to obey a court order, see Fed. R. Civ. P. 41(b). Additionally, the Court VACATES the hearing previously set for November 17, 2026. A new hearing on the Motion will be set if the Court determines that one is needed.

**IT IS SO ORDERED.**